UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DR. JACK SILVER,                                :
                                                :
                Plaintiff,          :  Civil Action No.: 05 CV 6844 (DC)(GWG)
                                                :
         -against-                       :
                                                :
NORTH SHORE UNIVERSITY                          :
HOSPITAL, NORTH SHORE-LONG                      :
ISLAND JEWISH HEALTH SYSTEM,                    :
INC. and THE FEINSTEIN INSTITUTE                :
FOR MEDICAL RESEARCH (F/K/A THE                 :
INSTITUTE FOR MEDICAL RESEARCH), :
                                                :
                Defendants.         :
-------------------------------------------------------x


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION *IN LIMINE***


                                      VENABLE LLP
                                      The Chrysler Building
                                      405 Lexington Avenue, 56th Floor
                                      New York, New York 10174
                                      (212) 307-5500


<u>Counsel</u>:
Michael J. Volpe (MV-0171)
Shaffin A. Datoo (SD-6929)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I. PLAINTIFF SHOULD BE PRECLUDED FROM USING TWO SUMMARY
CHARTS AT TRIAL REGARDING INVESTIGATOR FUNDING BECAUSE
THEY WILL CONFUSE AND MISLEAD THE JURY ......................................................2

    A. Plaintiff Should Be Precluded From Using The Chart Entitled
"Summary of Internal (Res Institute) Support" Because It Is Inaccurate ...............3

    B. Plaintiff Should Be Precluded From Using The Chart Entitled "Summary
of External Funding" Because It Is Inaccurate And Incomplete .............................3

II. PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING AND ARGUING
IN HIS OPENING AND CLOSING STATEMENTS THAT DR. CHIORAZZI
STATED "THINGS WOULD BE DIFFERENT IF [PLAINTIFF] WAS 35 .....................4

III. PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE
AT TRIAL REGARDING EMPLOYEES THAT WERE NOT SIMILARLY
SITUATED TO HIM...........................................................................................................5

    A. Plaintiff Should Be Precluded From Offering Evidence Regarding Severance
Agreements Given To Employees That Are Not Similarly Situated.......................6

    B. Plaintiff Should Be Precluded From Offering Evidence Regarding
Evaluations Of Investigators That Are Not Similarly Situated ...............................8

IV. PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE
REGARDING THE TERMINATION OF DR. MARIO RATAZZI ..................................8

V. PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE
REGARDING ANY ALLEGED EMOTIONAL DISTRESS HE SUFFERED .................9

    A. Plaintiff Did Not Produce Any Medical Records....................................................9

    B. Plaintiff Did Not Return To Defendants An Authorization Permitting
The Release Of His Medical Records....................................................................10

CONCLUSION ............................................................................................................................13

## TABLE OF AUTHORITIES

### Cases

Cali v. Hilton Hotels Corp.,
  1989 U.S. Dist. LEXIS 8946 (S.D.N.Y. Aug. 2, 1989) ............................................................. 11

Frances v. Runyon,
  928 F. Supp. 195 (E.D.N.Y. 1996) ........................................................................................... 5

Holland v. U.S.,
  348 U.S. 121, 75 S.Ct. 127, 99 L.Ed 150 (1954) ..................................................................... 2

Mareno v. Madison Square Garden, L.P.,
  2000 U.S. Dist. LEXIS 13941 (S.D.N.Y. Sept. 26, 2000 .......................................................... 5

Norville v. Staten Island Univ. Hosp.,
  196 F.3d 89 (2d Cir. 1999) ....................................................................................................... 5

Shumway v. United Parcel Serv., Inc.,
  118 F.3d 60 (2d Cir. 1997) .................................................................................................. 5, 8

U.S. v. Costello,
  221 F.2d 668 (2d Cir. 1955), aff'd 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) ............. 2

U.S. v. Harris,
  542 F.2d 1283 (7th Cir. 1976) .................................................................................................. 2

Williams v. Muhammad's Holt Temple of Islam, Inc.,
  2006 U.S. Dist. LEXIS 7425 (E.D.N.Y. Feb. 8, 2007) ....................................................... 11-12

### Statutes

Fed. R. Civ. P. R.26(a)(1)(C). ...................................................................................................... 10

Fed. R. Evid. 403 ............................................................................................................................ 2

Fed. R. Evid. 803(6). ...................................................................................................................... 3

## **PRELIMINARY STATEMENT**

Defendants, North Shore University Hospital, North Shore-Long Island Jewish Health System, Inc. and The Feinstein Institute for Medical Research (collectively "Defendants"), submit this memorandum of law in support of their motion *in limine* to preclude the following at trial:

1. Two summary charts regarding investigator funding because they are inaccurate and incomplete;

2. Testimony and argument in opening and closing statements that Dr. Chiorazzi stated that "things would be different if [Plaintiff] was 35" because nothing in the record attributes the statement to Dr. Chiorazzi;

3. Evidence regarding severance packages offered to employees that were not similarly situated to Plaintiff because: (a) none were Senior Investigators; (b) none were on the Scientific Track; (c) none were Laboratory Heads; and (d) none had the same job responsibilities as Plaintiff;

4. Evidence regarding evaluations of employees that were not similarly situated to Plaintiff because they reported to different supervisors;

5. Evidence regarding the termination of Dr. Mario Ratazzi because he did not work for the Feinstein Institute for Medical Research ("Research Institute") and it is based on inadmissible hearsay; and

6. Evidence regarding any emotional distress Plaintiff allegedly suffered because: (a) Plaintiff did not produce any medical records during discovery from his treating physicians and/or psychiatrists regarding same; and (b) Plaintiff did not return to Defendants an authorization permitting the release of his psychiatric medical records.

All exhibits referred to herein are attached to the Affirmation of Shaffin A. Datoo in support of Defendants' motion *in limine* submitted herewith.

1

## ARGUMENT

### POINT I

#### PLAINTIFF SHOULD BE PRECLUDED FROM USING TWO SUMMARY CHARTS AT TRIAL REGARDING INVESTIGATOR FUNDING BECAUSE THEY WILL CONFUSE AND MISLEAD THE JURY

Evidence which may be arguably relevant should not be admitted if it tends to mislead rather than enlighten the jury. U.S. v. Costello, 221 F.2d 668, 674 (2d Cir. 1955), aff'd 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); Fed. R. Evid. 403. This is particularly true where figures are summarized in documents which "have a way of acquiring an existence of their own, independent of the evidence which gave rise to them." Holland v. U.S., 348 U.S. 121, 128, 75 S.Ct. 127, 99 L.Ed 150 (1954). Evidence which leads to possible confusion should also be excluded. U.S. v. Harris, 542 F.2d 1283, 1317 (7th Cir. 1976); Fed. R. Evid. 403.

In response to Plaintiff's discovery requests, Mr. Daniel Halfant, Assistant Director of Special Funds/Grants for the Long Island Jewish Health System,[1] created two summary charts at the request of counsel entitled: (1) "Summary of Internal (Res Institute) Support" that purportedly summarized the amount of financial support given by the Research Institute to select investigators (Exhibit A); and (2) "Summary of External Funding" that purportedly summarized the amount of financial support given by external sources to select investigators (Exhibit B). (Exhibit C p.35, 58; Exhibit D ¶1 and ¶3 ). It should be noted that not every investigator on the chart is a Laboratory Head and/or on the Scientific Track and that not every investigator that is Laboratory Head and/or on the Scientific Track is listed on the chart. (Exhibit C p.37). Plaintiff

---

[1] As the Assistant Director of Special Funds/Grants, Mr. Halfant is responsible for coordinating the reporting of grants and preparing reports regarding grants for, *inter alia*, investigators at the Research Institute.

2

should be precluded from using these charts at trial because they are inaccurate and incomplete, and will only serve to confuse and/or mislead the jury.

A.  **Plaintiff Should Be Precluded From Using The Chart Entitled "Summary of Internal (Res Institute) Support" Because It Is Inaccurate**

The chart entitled "Summary of Internal (Res Institute) Support" is supposed to reflect the amount of financial support the Research Institute gave to certain investigators. However, at deposition, Mr. Halfant testified that the chart does not accurately reflect this amount because it includes non-Research Institute financial support given to some of the investigators by an external source - the Picower Institute. (Exhibit C p.44-45). Those investigators on the chart that received money from the Picower Institute are Drs. Al-Abed, Callaway, Metz, Schmidtmayerova, and Sherry. (Exhibit A). Simply put, this chart does not paint a true and accurate picture of the amount of financial support the Research Institute provided to its investigators.

Accordingly, because the chart is inaccurate and is likely to confuse and mislead the jury as to the amount of financial support given by the Research Institute to the investigators listed therein, Plaintiff should be precluded from using the chart as a summary at trial.[2]

B.  **Plaintiff Should Be Precluded From Using The Chart Entitled "Summary of External Funding" Because It Is Inaccurate And Incomplete**

The chart entitled "Summary of External Funding" is supposed to reflect the amount of financial support given by external sources to certain investigators. However, at deposition, Mr. Halfant testified that the chart does not accurately reflect this amount because it only includes financial support given by external sources to investigators by way of grant; it <u>did</u> <u>not</u> include

---

[2]   Plaintiff will not be prejudiced by the exclusion of this chart or the other chart because the underlying documents Mr. Halfant relied upon in creating the charts are admissible under the business records exception contained in Fed. R. Evid. 803(6). (Exhibit C p.38-40).

3

financial support that was given by way of: (1) contribution/philanthropic funds, i.e., Litwin Foundation; (2) internal competitive pool grants, i.e., grants given by the North Shore-Long Island Jewish Health System; (3) the Picower Institute; and (4) grants that were "brought over" by the Picower Institute investigators. (Exhibit C p.58, 62; Exhibit D ¶3). These other sources of external funding were not included in the chart because Mr. Halfant relied on annual reports of external support and this information was not listed therein. (Exhibit D ¶4). Simply put, this chart also does not paint a true and accurate picture of the amount of financial support given by external sources to the Research Institute's investigators.

Accordingly, because the chart is inaccurate and incomplete and is likely to confuse and mislead the jury as to the amount of financial support given by external sources to certain investigators, Plaintiff should be precluded from using the chart as a summary at trial.

## POINT II

### PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING AND ARGUING IN HIS OPENING AND CLOSING STATEMENTS THAT DR. CHIORAZZI STATED "THINGS WOULD BE DIFFERENT IF [PLAINTIFF] WAS 35"

Throughout this litigation, Plaintiff has consistently misquoted Dr. Chiorazzi by incorrectly attributing the following statement to him: "things would be different if [Plaintiff] was 35." (Exhibit E ¶17; Exhibit F p.13). There is nothing in the record that demonstrates that Dr. Chiorazzi made this statement. For example, on page 13 of Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion, Plaintiff cites page 144 of Dr. Chiorazzi's deposition transcript as support. (Exhibit F p.13). However, nowhere on page 144 or for that matter, nowhere in the entire deposition transcript, does Dr. Chiorazzi testify to making that statement. (Exhibit G p.144). Moreover, nowhere in the transcript of the tape recording does Dr. Chiorazzi utter that statement. (Exhibit H).

4

Accordingly, Plaintiff should be precluding from testifying and arguing in his opening and closing statements that Dr. Chiorazzi made this comment.

### POINT III

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE AT TRIAL REGARDING EMPLOYEES THAT WERE NOT SIMILARLY SITUATED TO HIM

Plaintiff should be precluded from offering evidence at trial regarding employees that were not similarly situated to him because such evidence is not relevant to Plaintiff's age discrimination claim.

"In order for testimony about other employees to be probative of discrimination, those employees must be similarly situated to the plaintiff in all material respects." Mareno v. Madison Square Garden, L.P., 2000 U.S. Dist. LEXIS 13941, at *6 (S.D.N.Y. Sept. 26, 2000); see Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999); Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997). In Frances v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996), the Eastern District of New York held:

> [e]mployees are not similarly situated merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

(Emphasis added) (Internal quotation marks omitted).

In this case, the Research Institute was divided into the following four "Centers of Excellence," each of which focus on different areas of scientific research:

5

| Center of Excellence | Director/Co-Director of Center |
|---|---|
| Genomics & Human Genetics | Dr. Peter Gregersen |
| Neuroscience | Dr. David Eidelberg |
| Immunology & Inflammation | Dr. Nicholas Chiorazzi/Dr. Savita Pahwa |
| Oncology & Cell Biology | Dr. Itzhak Goldberg/Dr. Bettie Steinberg |

(Exhibit I ¶7).

Plaintiff was a Senior Investigator on the Scientific Track[3] who was a Laboratory Head in the Center for Immunology & Inflammation. (Exhibit I ¶8; Exhibit J p.25). As a result, he reported directly to Drs. Chiorazzi and Pahwa. (Exhibit I ¶8). Plaintiff's primary responsibilities were to conduct research, obtain external funding to support the cost of his laboratory and to be productive scientifically. (Exhibit J p.25-26).

A.   **Plaintiff Should Be Precluded From Offering Evidence Regarding Severance Agreements Given To Employees That Are Not Similarly Situated**

Plaintiff alleges, *inter alia*, that he was discriminated against because of his age because Dr. Chiorazzi did not offer him a severance package as he did to "individuals who were younger." (Exhibit J p.119). Discovery revealed that five employees of the Research Institute who are younger than Plaintiff received severance packages. However, out of the five employees: (1) none were similarly situated to Plaintiff; and (2) only two were offered severance packages while Dr. Chiorazzi was the Director and CEO of the Research Institute.[4]

---

[3]   Associate Investigators and Investigators on the Scientific Track generally head their own research laboratory and are responsible for obtaining external funding to cover the costs associated with their research laboratories.

[4]   As a result of confidentiality agreements contained in the severance agreements, the parties agreed during discovery to keep the identity of the employees confidential. In order to maintain confidentiality, Defendants will refer to the employees as "Employee #_" and in gender-neutral language. Defendants will supply Plaintiff with a legend so he can decipher who Defendants are referring to herein.

6

Employee #1 was an administrative assistant to the Chief Operating Officer of the Research Institute. (Exhibit I ¶3). His/her job duties were commensurate with that of an administrative assistant. (Exhibit I ¶3).

Employee #2 was the Director of the North Shore University Hospital Research Core Facilities and the Viral Vector Laboratory. (Exhibit I ¶4). The core facility provided technical services to the Research Institute's investigators. (Exhibit I ¶4). His/her job duties were to oversee all technical services and to supervise the technical personnel that operated the high-tech equipment. (Exhibit I ¶4). Employee #3 and Employee #4 were responsible for operating the mass spectrometer, which was part of the core facility, and analyzing samples that were processed through the mass spectrometer. (Exhibit K ¶3 and ¶4). Employee #5 replaced Employee #2 as the Director of the core facility and assumed the former's job responsibilities. (Exhibit I ¶6; Exhibit K ¶5).

None of these employees: (a) were Senior Investigators; (b) were on the Scientific Track; (c) were Laboratory Heads; (d) conducted scientific research; (e) had any funding responsibilities; and (f) were required to publish. (Exhibit I ¶5; Exhibit K¶6). Simply put, an administrative assistant and employees that provide technical services to researchers are not similarly situated to Plaintiff.

Furthermore, Employee #3, Employee #4 and Employee #5 separated from the Research Institute approximately fifteen months <u>after</u> Plaintiff was terminated. (Exhibit K ¶7). Because Dr. Chiorazzi resigned as CEO in December 2005, these employees were offered severance in June 2006 while Dr. Kevin Tracey was the Director and Chief Executive Officer of the Research Institute. (Exhibit I ¶1 and ¶11).

7

Accordingly, because none of these employees were similarly situated to Plaintiff, he should be precluded from offering evidence regarding the severance packages these employees received.

B. **Plaintiff Should Be Precluded From Offering Evidence Regarding Evaluations Of Investigators That Are Not Similarly Situated**

In Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997), the Second Circuit held that employees with different supervisors were not similarly situated for purposes of a disparate treatment claim. Therefore, in this case, the only evaluations that are relevant are those of investigators who worked in the Center for Immunology & Inflammation and were evaluated by Drs. Chiorazzi and/or Pahwa.

For example, Dr. Daniel Grande was in the Center for Oncology & Cell Biology and was reviewed by Dr. Steinberg. (Exhibit I ¶9). Accordingly, Plaintiff should be precluded from offering evidence regarding Dr. Grande's performance evaluations.

## POINT IV

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING THE TERMINATION OF DR. MARIO RATAZZI

At deposition, Plaintiff testified that Dr. Mario Ratazzi was "someone" who was already "there" prior to Plaintiff's employment with North Shore University Hospital and "was terminated several years later and he was an older individual." (Exhibit J p.149). Plaintiff further testified that Dr. Ratazzi "probably was director of a laboratory" but later admitted that he did not know. (Exhibit J p.152). In actuality, Dr. Ratazzi did not work at the Research Institute. (Exhibit I ¶10). In addition, Plaintiff, who did not have personal knowledge of the reason why Dr. Ratazzi was terminated, testified that he was told Dr. Ratazzi was terminated because "he hadn't gotten funded." (Exhibit J p.149).

8

Accordingly, Plaintiff should be precluded from testifying about Dr. Ratazzi's termination because he did not work at the Research Institute and the purported reason for his termination is based upon inadmissible hearsay.

### POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING ANY EMOTIONAL DISTRESS HE ALLEGEDLY SUFFERED

Plaintiff should be precluded from offering evidence regarding any emotional distress he allegedly suffered as a result of any alleged discrimination and/or retaliation because: (1) Plaintiff did not produce any medical records during discovery from his treating physicians and/or psychiatrists regarding same; and (2) Plaintiff did not return to Defendants an authorization permitting the release of his psychiatric medical records.

A.     **Plaintiff Did Not Produce Any Medical Records**

At deposition, Plaintiff testified that he "suffered severe emotional distress," "had to see a psychiatrist because [he] was severely depressed and had thoughts of suicide," and "was put on medication, antidepressants." (Exhibit J p.180-181). Defendants requested Plaintiff to identify all documents regarding any injury, illness, medical problem or medical condition Plaintiff suffered for which he received treatment and requested Plaintiff to provide "[a]ll documents which relate to or evidence the emotional distress, severe mental and emotional harm, and nonpecuniary losses Plaintiff experienced." (Exhibit L #3(e); Exhibit M #20 and #33). In response, Plaintiff only produced: a self-serving letter written by him to Dr. Ezra Feuer, who was his treating psychiatrist, and whom Plaintiff only saw twice (Exhibit J p.182-183; Exhibit N Bates Stamped 415); a statement from Dr. Feuer for services rendered in the amount of $375 (Exhibit N Bates Stamped 416); copies of two labels from a prescription bottle (as opposed to a

9

written prescription from a doctor) (Exhibit N Bates Stamped 420-421); and several online order forms for medication (Exhibit N Bates Stamped 417-419, 422-430).

Notably, Plaintiff neither identified nor produced any medical records from Dr. Feuer or any other psychiatrist or mental health professional. (Exhibit N Bates Stamped 415-430; Exhibit O #3; Exhibit P #20 and #33). To date, Plaintiff has neither identified nor produced any medical records that are responsive to Defendants' requests. Moreover, Plaintiff has indicated that he intends to call Dr. Feuer as a witness at trial and will seek more than "garden-variety" emotional distress damages. As a result, Defendants have been substantially prejudiced because they have not been able to review Plaintiff's psychiatric medical records.

### B. Plaintiff Did Not Return To Defendants An Authorization Permitting The Release Of His Medical Records

On September 29, 2006, Plaintiff served Plaintiff's Third Amended R. 26(a)(1) Disclosures. (Exhibit Q). In his disclosures, Plaintiff amended his prior disclosures by including, for the first time, a computation of his alleged emotional distress damages. (Exhibit Q #1). Specifically, Plaintiff indicated that he was going to seek emotional distress damages of not less than $200,000.[5] (Exhibit Q #1). However, Plaintiff did not provide Defendants with any documents on which his computation was based, including any documents "bearing on the nature and extent of injuries suffered" as required by Fed. R. Civ. P. R. 26(a)(1)(C) and to support his deposition testimony regarding any emotional distress he allegedly suffered.

Nevertheless, because of Plaintiff's continued failure to produce his psychiatric medical records, Defendants faxed Plaintiff a letter on October 4, 2006 requesting that he execute an authorization permitting Dr. Feuer to release Plaintiff's medical records to Defendants. (Exhibit

---

[5] Eight months later on June 11, 2007, Plaintiff amended his Rule 26 disclosures again by letter and indicated that he was going to seek emotional distress damages of not less than $1,000,000.

10

R).[6] To date, Plaintiff has not returned the authorization to Defendants. As a result, Defendants have been substantially prejudiced for the same reasons as set forth above.

In similar circumstances, the Southern District of New York has precluded a plaintiff from pursuing a claim of emotional distress. For example, in Cali and Cali v. Hilton Hotels Corp., 1989 U.S. Dist. LEXIS 8946, at *5-*7 (S.D.N.Y. Aug. 2, 1989), the court granted the defendant's motion *in limine* and precluded Dr. Cali from pursuing his claim of emotional distress because his co-plaintiff/wife, Mrs. Cali, refused to provide the defendant with an authorization for the release of Dr. Cali's medical records. In Cali, the defendant moved to preclude the plaintiffs from offering evidence at trial bearing upon Dr. Cali's claim for emotional distress allegedly sustained in a fall that prevented him from working. Id. at *1. At deposition, Dr. Cali testified that he and Mrs. Cali consulted Dr. and Mrs. Church in connection with marital problems. Id. at *6. The defendant requested authorizations so that it could examine the records of Dr. and Mrs. Church. Id. Because Mrs. Cali refused to provide an authorization, Dr. Church refused to release the records because both of the plaintiffs were under his care. Id.

In precluding Dr. Cali from pursuing his claim for emotional distress, the court held:

> Dr. Cali's prior psychiatric records are material to the defense of his claim for emotional distress. . . . It would be highly prejudicial to defendant to permit Dr. Cali to present evidence in support of his claim of a damaged psychological state without allowing defendant the opportunity to demonstrate that his condition preexisted his accident at the Hilton.

Id. at *6-7.

At the very least, Plaintiff should be precluded from offering evidence that he sought and/or received medical or psychiatric treatment for his alleged emotional distress. For example, in Williams v. Muhammad's Holt Temple of Islam, Inc., 2006 U.S. Dist. LEXIS 7425, at *14-16

---

[6] The last page of Exhibit R is the facsimile confirmation sheet verifying that the authorization was sent to Plaintiff.

(E.D.N.Y. Feb. 8, 2007), the court granted the plaintiff's motion *in limine* and precluded the defendant from offering evidence regarding the plaintiff's telephone records because the defendant refused to timely provide an authorization for the release of the records. In Williams, the plaintiff moved to exclude evidence concerning references to her telephone records because the defendant failed to provide her with authorizations for defendant Chavis's cell phone. Id. at *2-3, 15. The plaintiff contended that introducing evidence of only her phone calls to defendant Chavis, and not his to her, would be "'confusing and prejudicial'" and that "'the appropriate sanction for Defendant's deliberate refusal to timely provide authorization for telephone records is to preclude Defendants from presenting evidence derived from Plaintiff's phone records . . . .'" Id. at *15. In granting the plaintiff's motion, the court held:

> plaintiff would be unduly prejudiced by the introduction of, or references to, her telephone records absent the opportunity to obtain telephone records pertaining to defendant Chavis.

Id. at *16.

Accordingly, Plaintiff should be precluded from seeking damages for any emotional distress he allegedly suffered.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that this Court grant their motion *in limine* in its entirety and award Defendants such other and further relief that this Court deems just and proper.

Dated: September 28, 2007
       New York, New York

                                      Respectfully submitted,

                                      VENABLE LLP
                                      The Chrysler Building
                                      405 Lexington Avenue, 62nd Floor
                                      New York, New York 10174
                                      (212) 307-5500

By: _____
                                      Michael J. Volpe (MV-0171)
                                      Shaffin A. Datoo (SD-6929)

                                      ATTORNEYS FOR DEFENDANTS